### THE CLIFTON.

*(District Court, D. New Jersey. December 8, 1882.)*

1. COLLISION—EIGHTEENTH SAILING RULE.

Where two vessels are approaching each other nearly end on, involving the risk of a collision, the eighteenth sailing rule requires that the helms of both vessels should be put to port so that each vessel should pass on the port side of the other, and the vessel failing to obey this rule will be held in fault in case of a collision.

2. SAME—SIGNAL WHISTLE—PILOT REGULATIONS.

By the first rule of "the regulations for the government of pilots" it is prescribed that when steamers are approaching each other head and head, or nearly so, it shall be the duty of each steamer to pass to the right or on the port side of each other, and the pilot of either steamer may be first in determining to pursue this course, and shall give, as a signal of his intention, one short, distinct blast of his steam-whistle, which the pilot of the other steamer shall answer promptly by a similar blast, and if the answer be two blasts of the steam-whistle, in response to a single blast, such steamer will be held in fault in case of a collision.

In Admiralty.

*Bedle, Muirheid & McGee,* for libelant.

*Goodrich, Deady & Platt,* for claimants.

NIXON, D. J. This action is brought by the owners of the steam-tug Johnson Brothers against the steam-tug Clifton for damages arising from collision. The libel alleges that on the evening of the tenth of October, 1881, the tug-boat Johnson Brothers was steaming down the East river from Seventeenth street, New York city, bound for Jersey City; that said tug left Seventeenth street at 6:30 o'clock in the afternoon on a flood-tide; that shortly afterwards she discovered a tug-boat coming up the river in shore with a sloop in tow, and so shaped her course as to pass on the outward or eastern side of said tug and tow; that she then saw coming out from under her stern the tug-boat Clifton, showing a red light and a high white light. The Johnson Brothers immediately ported her helm and blew one whistle, and still seeing the red light of the Clifton and not hearing any answer to the whistle, put her helm hard a-port and again blew one long whistle, and the pilot rang four bells to stop, slow, and back said Johnson Brothers, which were at once obeyed. Upon the second whistle being blown the Clifton replied with two short whistles, and then swung around and showed both of her head-lights, and about five seconds afterwards struck the Johnson Brothers on the port bow, about four feet aft of her stem, and cut her about two-thirds in two, and left her in a sinking condition. The said collision occurred a few minutes after half-past 6 o'clock on the evening aforesaid, off Tenth street, in the East river, and on the New York side; that just previous to the collision, and immediately before putting her helm hard a-port, the Johnson Brothers was heading straight down the river; that it was not dark, but the weather was fair, and lights at the time could be plainly distinguished. It further alleged that at the time when the two vessels first came in sight of each other they were meeting end on, or nearly end on, so as to involve risk of collision, and that if the Clifton had put her helm a-port, or if she had kept her course, or if she had backed or taken any of the precautions to avoid a collision which the Johnson Brothers did, the collision would have been avoided. The answer of the respondents denies the statement of facts in the libel, and claims that on the evening in question the Clifton had landed near the south ferry in New York and was going up the river to Twelfth street for water, and was running pretty close along the piers on the New York side; that when off Fifth or Sixth street she sighted ahead the tug-boat Sarah with a schooner in tow on her starboard side; that when the Clifton got about off Ninth-

street pier she was close behind the schooner; that the Clifton, as soon as she passed Ninth street, hauled a little to port, intending to pass inside the schooner; that before the Clifton thus hauled in she had seen the green light and not the red light of the Johnson Brothers; that if the Johnson Brothers had kept her course she would have gone considerably to the starboard side of the Clifton, the said vessels being neither end on nor head to head, nor nearly so, but that just about the time the Clifton had hauled to port, after passing Ninth street, the Johnson Brothers gave one blast of her whistle, which was instantly answered by the Clifton with two blasts of her whistle; that thereupon the Johnson Brothers gave another single blast, which was also answered by the Clifton with two blasts, when suddenly and for the first time the red light of the Johnson Brothers came into view, and the engine of the Clifton was stopped and reversed, and her wheel hove hard a-starboard; but that almost immediately the collision occurred, the starboard bow of the Clifton and the port bow of the Johnson Brothers coming into violent collision.

After examination of the voluminous and contradictory testimony, I am of the opinion that the Clifton was in fault, and that the collision would not have occurred if those managing her had observed the rules of navigation applicable to the case. The two vessels were approaching each other nearly end on, involving the risk of coming together. The eighteenth sailing rule (section 4233, Rev. St.) requires, under such circumstances, that the helms of both vessels should be put to port, so that each vessel may pass on the port side of the other. The Johnson Brothers obeyed this rule, but the Clifton did not. Her pilot determined to pass the Sarah and her tow on the larboard or New York side, and in order to do this she starboarded her helm, although by so doing she was brought across the track of the Johnson Brothers, and came into collision with her. Besides, the Clifton was in fault in answering the single whistle of the Johnson Brothers with two whistles. By the first rule of "The regulations for the government of pilots, adopted by the board of supervising inspectors in June, 1871, and amended in January, 1875," it is prescribed that "when steamers are approaching each other head and head or nearly so, it shall be the duty of each steamer to pass to the right or on the port side of each other, and the pilot of either steamer may be first in determining to pursue this course, and thereupon shall give as a signal of his intention one short and distinct blast of his steam-whistle, which the pilot of the other steamer shall answer promptly by a sim-

ilar blast of his steam-whistle, and thereupon such steamer shall pass to the right or on the port side of each other." The pilot of the Johnson Brothers was the first to determine the course, and by one whistle gave notice to the Clifton to port her helm and pass to the right. But the pilot of the Clifton, wishing to go into the Twelfth-street dock by the shortest way, declined to accede to the arrangement, and replied with two whistles rather than one. It was as if he had said to the Johnson Brothers: "I hear your single whistle, but I give you notice, by returning two whistles, that I do not mean to comply with your request and go by you on your port side. I prefer to hug the wharves, and pass you on your starboard side, although the first rule or regulation, governing both of us, gives the pilot of either steamer the right of first determining on which side he will pass the other, and when he has given the notice of his determination by a single whistle, the other must accede by returning the same signal, and passing to the right, or on the port side of each other."

There must be a decree for the libelants, and a reference to ascertain the damages.